ESTERLY HARVESTING MACHINE CO. v. AARON B. VEEDER.

[FILED MAY 20, 1890.]

1. **Contract:** CONSTRUCTION: EVIDENCE. The provisions of the contract, set out in the opinion, construed, and the testimony in the case *held* to sustain the verdict of the jury.

2.  ――――: ――――: ――――: INSTRUCTIONS. *Held*, No reversible
     error in the instructions given by the court to the jury, or in
     the rulings of the court on the admission of testimony.

ERROR to the district court for Hall county.    Tried
below before HARRISON, J.

*Thummel & Platt*, for plaintiff in error, cited on the
point that a custom could not be proved unless pleaded,
nor shown to modify an express contract : Lawson, Usages
and Customs, p. 413; *Blackett v. Assur. Co.*, 2 Cromp. &
J. [Eng.], 244; *Brown v. Foster*, 13 Mass., 136; *Dixon v.
Dunham*, 14 Ill., 324; *Partridge v. Ins. Co.*, 15 Wall.
[U. S.], 573; *Lucke v. Yoakum*, 25 Neb., 427.

*O. A. Abbott, contra.*

NORVAL, J.

The petition contains two counts.   The first is upon a
special contract to recover the sum of $1,200 for eight
harvesting machines, and the other is for a balance claimed
to be due on a promissory note given by the defendant to
the plaintiff.   The answer denies a breach of the contract
and pleads payment of the note.   The defendant was the
agent of the plaintiff for the seasons of 1885 and 1886, for
the sale of its machinery at St. Paul, Nebraska.   The con-
troversy stated in the first cause of action grows out of the
business for the year 1886.   On the 14th day of December,
1885, the parties entered into a written agreement whereby
the defendant agreed to act as agent of the plaintiff until
October 1, 1886, and to pay all freight from the factory on
all machines, twines, and extras shipped him.   He was to
receive certain commissions on machines sold.   Other terms
of the contract will be referred to hereafter.   Among other
goods on hand when the contract was entered into, the de-
fendant had fifteen twine binding harvesters.   Of these,
seven were afterwards sold by the defendant and settlement

therefor duly made with the plaintiff. The eight machines remaining unsold at the close of the season of 1886 the plaintiff claims that the defendant should pay for. It bases its right to sue for the machines not sold upon the following stipulations of the contract:

## "DELIVERY.

" 5th. To take any part or parcel off a machine to supply customers with repairs is strictly forbidden, and any machine thus robbed shall be settled for the same as if sold.

## "RETURNS.

"3d. The said agent agrees that if any machine, twine, or extras remain unsold at or near the close of this season's sales, if either are ordered away, he will promptly deliver same in good order at his railroad depot, free from all freight and charges.

" 4th. And the said agent is to keep the parties of the first part harmless from all charges for storage, reshipping, cartage, and to hold all unsold machines and parts of machines on hand, for such time after the expiration of his contract (not to exceed one year) as may be desired by said parties of the first part.

## " FINALE.

" 3d. The undersigned agent hereby also accepts the twine binding harvesters, and mowers, now on hand from last season, numbered as follows: (here numbers are given) under the terms of this contract, same to be settled for at the time of settlement for 1886, if requested by party of the first part."

When the settlement for the year 1886 was made, the seven machines that had been sold by the agent were settled for, and the defendant contends that no request was then made that he should pay for the eight unsold. Under the provisions of "Finale, 3d," the plaintiff's right to demand pay for those on hand expired when the settlement for the year 1886 was had. The defendant was not to pay

for them unless requested by the plaintiff at that time to
do so.    Again, the plaintiff claims that he demanded of
the defendant, months after the settlement, that he deliver
a part of these unsold machines for the plaintiff at the
railroad depot in St. Paul.    This is entirely inconsistent
with the claim now made that the plaintiff is entitled to
recover under the last above quoted clause of the contract.
Besides, the plaintiff in its petition grounds its first cause
of action solely upon the other three clauses of the agree-
ment.

It is insisted that the defendant, in violation of the con-
ditions contained in "Delivery, 5th," removed parts of five
of the machines on hand and sold the parts to the farmers
for repairs.    This charge, if true, would certainly entitle
the plaintiff to recover for the ones thus robbed.    One of
the five from which it is claimed that parts are missing is
an old 1881 machine that was turned over to the defend-
ant by Mr. Hurford in 1885, when the latter ceased to act
as agent for the plaintiff at St. Paul.    A large portion of
this machine was gone when received by the defendant and
the plaintiff agreed to supply free the missing parts.
Some repairs were sent to the defendant for that purpose,
but not enough, and it was finally thought best not to re-
pair it, and the repairs sent for that purpose were charged
to the defendant, by him sold to his customers, and after-
wards he settled with the plaintiff therefor.    Under date
of March 7, 1885, Mr. W. G. Leffingwell, the general
agent of the plaintiff, addressed a letter to the defendant in
regard to this machine, in which he says: "We will put
that machine that you have there, that was shipped to Mr.
Hurford, in good working order, and allow you to use
your own judgment in making prices on it, but we wish it
sold this year."    It was never put in order, and now the
defendant is asked to pay $150 for this fragment of a ma-
chine.    The plaintiff's witnesses admit that when this
machine was turned over to the defendant it had been

robbed of a great many pieces. The testimony of C. D. Hibbard and J. H. Hauners is to the effect that in August 1887, nearly a year after the expiration of the defendant's agency, they made an examination of the machines and found three perfect ones, and four with missing parts, besides the old machine. These witnesses name nine articles missing from the four harvesters, ranging in price from fifteen cents to $2.50.

J. H. Hauners further testifies that he was in the employ of the plaintiff in 1886, in setting up and starting ma-chines; that he was sent for that purpose to assist the defendant that year, and while assisting the defendant he took a needle off of the old machine and put it on an old harvester for a man in the country.

A. B. Carl testifies that in 1885 or 1886, while in the employ of the plaintiff, he assisted the defendant in taking a cutting platform and a "trip dog" off of the old machine.

A. B. Veeder, the defendant, testifies, in substance, that he never took any article from or robbed any of the eight machines in controversy; that he never directed either of the witnesses Carl and Hauners to remove any article from any of these machines; that he had never been requested to deliver the eight harvesters to the plaintiff, but that in August, 1887, he was asked to pay for five and deliver at the railroad depot for plaintiff three. The defendant further states that since the commencement of this action he has carefully examined the seven new machines and found that there was one wooden roller broken and lost out of the end of one of the platforms, and that was the only thing that was absent from the seven, and that that was probably lost in shipping; that when he settled with Mr. Hibbard, the agent of the plaintiff, in the fall of 1886, Mr. Hibbard examined the machines that were then on hand and the only one that there was any dispute about at that time was the old one. The testimony of J. L. Bryan, T. J. Hurford, and J. E. Baldwin, corroborates the defend-

ant to the effect that the machines had not been robbed. They each testify to having examined the seven new machines since the bringing of this action, and that with the exception of the broken roller testified to by the defendant nothing else was missing.

The burden was upon the plaintiff to establish that the defendant had violated the terms of the contract by robbing the machines as charged. The defendant and his witnesses appear to be intelligent and truthful, and the testimony of each was given in a manner calculated to impress one with its reliability. The testimony will not justify us in saying that the finding of the jury upon this disputed point of the case is clearly wrong.

Nearly a year after the expiration of the agency the plaintiff requested the delivery of three of the machines at the railroad depot in St. Paul, coupled with a demand that the defendant should also pay for the five claimed by the plaintiff to have been robbed of some of their parts. To have delivered the three machines under the circumstances doubtless would have been construed as an admission by the defendant of the validity of the plaintiff's claim for compensation for the other five. The defendant was therefore justified in refusing to comply with the plaintiff's request.

It cannot be claimed that in either of the quoted provisions of the contract it is stated that the defendant should pay for such machines as he shall refuse to deliver for the plaintiff at the railroad station. The agreement expressly stipulates that where the defendant shall rob a machine, he shall pay for such machine as if sold. The providing for compensation in that case, and the failure to stipulate for it in the other, is quite significant. The most that can be claimed, upon a fair interpretation of the language of the agreement, is that the defendant would be liable for any damages the plaintiff may have sustained by his failure to deliver at the railroad depot in St. Paul the unsold ma-

chines. It is evident that a recovery cannot be had for their value.

The plaintiff insists that there is a balance of about $70 due it on the promissory note set up in its second cause of action. The defendant claims the right to set off against the note the amount paid by him as freight on the unsold machines. That the amount thus paid by the defendant equaled the balance of the note is not questioned, but the right to offset the amount is denied by the plaintiff. The agency contract made it the duty of the defendant in the first instance to pay the freight charges from the factory. It is established by the evidence that the amount paid for freight on a machine was allowed to be added to the selling price fixed in the contract, and when a machine was shipped to another agent at the plaintiff's request, the freight charges followed the machine and were repaid to the defendant. The money paid by the defendant for transportation was advanced for the plaintiff, and when the agency terminated he was entitled to be reimbursed for the freight paid on the machines then on hand. Counsel for plaintiff ask, if the defendant claimed that the plaintiff was indebted to him, why was the note given? The note was taken at the time the contract of agency was entered into in payment for repairs, and at that time the defendant had no right to demand a repayment of the amount paid for freight. It was only when his agency terminated that he was entitled to demand a repayment of the money.

The remaining assignments of error are based upon the rulings of the court on the taking of the testimony, and to the giving of two instructions. The defendant, over the plaintiff's objection and exception, testified that one of the machines sued for, No. 570, when he received it, "was old parts of machines. I can't say but there might have been one-half of the machine there, just odds and ends of an old machine of 1881." It was entirely competent for the defendant to prove the condition of any of the machines

when received.   He was not responsible for the parts that were missing when they came into his possession.   The defendant also proved that in conducting the business of the agency the plaintiff recognized his right to be repaid the amount advanced for freight.   This was pertinent and proper.   It showed what interpretation the parties had previously placed upon their contract, and which construction was not in the least repugnant to the terms of the agreement.

On the cross-examination of C. D. Hibbard, a witness for the plaintiff, he was asked this question: "You may now state whether or not under contracts of this kind there is a custom between the company and the agents whereby it recognizes the agent's right to the freight which they pay on these machines."   This was objected to, as incompetent and immaterial.   The objection was overruled and an exception taken.   The witness answered, "I don't know whether I could state at that time whether there was or not, as Mr. Leffingwell was the man that had all the transferring of these machines in charge.   For the present time I can state."   The witness did not state what the custom was, and the answer was therefore not injurious to the plaintiff.

The defendant testified, over an objection, what price he sold the machines at.   The machines sold were not in issue in the case, and while it was immaterial what price they brought, we do not see how this testimony could in the least have had any influence upon the jury.   Testimony was introduced showing the value of the parts claimed to have been taken from the machines, from which it appears that some were of but little value.   In view of this testimony, the court instructed the jury that "if you find from a preponderance of the evidence the defendant took any part or parcel off any machine to supply customers with repairs, or 'robbed' any of said machines, it makes no difference what was the value of the part or parts taken, but as to any machine or machines so robbed, if any, you

will find for the plaintiff." The error, if any, committed in permitting testimony to be given as to the value of the parts claimed to be missing was cured by the giving of the above instruction.

By the second instruction, given on the request of the defendant, the jury were told that the machines must have been robbed prior to October 1, 1886, to authorize a recovery therefor. The entire testimony establishes that if any parts were gone, they were taken prior to the above date, therefore no injury could have resulted from the giving of this instruction.

The other instruction complained of was to the effect that after October 1, 1886, the defendant's liability to the plaintiff was that of a warehouseman, and as the plaintiff claimed no neglect or default in caring for the machines after that date, no verdict could be found against the defendant for any neglect or default as a warehouseman. The contract required the defendants to store the machines for one year after the termination of the agency, and as there was no evidence of any breach of the agreement in that regard, it was proper to so inform the jury.

The judgment of the district court is

AFFIRMED.

THE other judges concur.